State Farm Mutual Automobile
Insurance Company,

      Plaintiff,

v.

Performance Orthopaedics &
Neurosurgery, LLC, *et al.*,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT

THIS CAUSE came before the Court upon the following motions: Defendant Metropolitan Health Community Services Corporation's Motion to Dismiss (ECF No. 60), and Defendants Performance Orthopaedics & Neurosurgery, LLC, Physicians Central Business Office, LLC, Mark Cereceda, and Brian Mevorah's Motion to Dismiss (ECF No. 61), to which Defendants, Omni Neurological, Orthopedic & Spine Center, Inc. and Sergio Triana filed a Notice of Joinder (ECF No. 63).[1] Both motions are fully briefed and now ripe for review. For the reasons that follow, both motions to dismiss are GRANTED IN PART AND DENIED IN PART.

---

[1] Defendant Surgery Center of Coral Gables, LLC ("Coral Gables") also filed a Motion to Dismiss (ECF No. 62), but Plaintiff and Coral Gables filed a Joint Stipulation (ECF No. 131) dismissing Coral Gables from this action. The Court subsequently dismissed Coral Gables from this case and denied Coral Gables' pending Motion to Dismiss as moot. *See* September 25, 2017 Paperless Order (ECF No. 132).

## I.    BACKGROUND[2]

In its Amended Complaint, State Farm Mutual Automobile Insurance Company ("Plaintiff" or "State Farm") alleges a "scheme" involving Defendants Performance Orthopaedics & Neurosurgery, LLC d/b/a Calhoun Orthopaedics & Neurosurgery ("Calhoun"), Omni Neurological, Orthopedic & Spine Center, Inc. ("Omni"), Metropolitan Health Community Services Corporation d/b/a Metropolitan Hospital Of Miami ("Metropolitan"), Surgery Center Of Coral Gables, LLC d/b/a Coral Gables Surgery Center ("Coral Gables"), Physicians Central Business Office, LLC ("CBO"), Mark Cereceda, D.C. ("Cereceda"), Sergio Triana, D.C. ("Triana"), and Brian Mevorah, D.C. ("Mevorah") (collectively, "Defendants"). *See* Amended Complaint ("Am. Compl.") (ECF No. 56) ¶ 1.

This scheme consisted of two allegedly "unlawful referral arrangements," *id.* ¶ 121. The first such arrangement (the "Metropolitan Arrangement") took place from early 2012 through April 2014. *Id.* ¶ 6. During that time, Calhoun, a medical practice which specialized in orthopedic treatment and surgery, referred patients to Metropolitan, a surgical facility where Calhoun's physicians would perform surgery. *Id.* ¶ 6. Prior to treatment, Calhoun required each patient to execute a Letter of Promise (or "LOP"), which provided that Calhoun would be paid from any settlement, judgment, or verdict rendered in connection with the patient's personal injury claim. *Id.* ¶ 60; *see also id.* ¶¶ 39–40. For each referred surgical procedure performed on Calhoun's patients, Calhoun paid Metropolitan an all-inclusive pre-arranged price in full satisfaction of the patient's surgical facility charges. *Id.* ¶ 6. The amount Calhoun paid was

---

[2] The following background facts are taken from Plaintiff's Amended Complaint (ECF No. 56) ("Am. Compl.") and are accepted as true for purposes of ruling on a Motion to Dismiss. *See Florida Family Policy Council v. Freeman*, 561 F.3d 1246 (11th Cir. 2009).

typically pre-negotiated and based on a price list that assigned a specific dollar amount to particular procedures. *Id.*

Despite this pre-arranged price, however, Metropolitan prepared and sent invoices to Calhoun which reflected an amount for Metropolitan's services that "greatly exceeded" the amount Calhoun actually paid to Metropolitan. *Id.* These invoices purportedly reflected itemized charges for each of the supplies and services rendered. *Id.* ¶ 71. These invoices did not include any reference to, or deduction for, the amount that Calhoun actually paid Metropolitan. *Id.* ¶ 6. Rather, the "invoices" showed the total amount of Metropolitan's itemized charges as an unpaid "balance." *Id.* ¶ 71.

CBO, a company which performed billing and collections for Calhoun, transmitted the Metropolitan invoices to Calhoun's patients' personal injury attorneys on Calhoun's behalf for inclusion in settlement demands to State Farm. *Id.* ¶ 6. In its transmittals, Calhoun did not make any reference to, or deduction for, the amount that Calhoun actually paid to Metropolitan. *Id.* State Farm alleges that it was unaware of this payment arrangement, and was therefore deceived and injured because it made settlement payments based on the "inflated" invoices resulting from this arrangement. *Id.* ¶ 7; *see generally id.* ¶¶ 2, 4, 5, 26, 27, 106–08.[3]

The second allegedly unlawful referral arrangement (the "Coral Gables Arrangement") began in April 2014, when Metropolitan closed. *Id.* Omni referred patients to Coral Gables, where Omni's physicians performed ophthalmic and spine surgeries. *Id.* ¶ 6, 25, 3–5, 104–105. Omni continued to require its patients to execute LOPs before rendering any treatment. *Id.* ¶ 60.

---

[3]  In early 2014, Calhoun split into two entities—non-party Waterford Orthopedics Inc. ("Waterford") and Omni—both of which continued the "scheme" with Metropolitan. *Id.* While Waterford continued to employ CBO for transmitting bills to Plaintiff, Omni submitted its bills to the Plaintiff's attorneys directly. *Id.* ¶ 6, 20. After one and a half months, Waterford merged into Omni. *Id.* ¶ 6.

Under the LOPs, Omni's patients did not have to pay Omni for medical services and agreed to later pay Omni from any settlement, judgment, or verdict in connection with the patient's personal injury claim. *Id*. In exchange for referrals, Coral Gables allegedly provided Omni with invoices reflecting Coral Gable's "usual and customary" surgical facility charges, which "never accounted for the fact that Coral Gables agreed to a pre-arranged price from Omni" for the services it provided. *Id.* ¶¶ 70, 107. Omni did not pay the "usual and customary" charges and instead negotiated with Coral Gables to pay fixed, all-inclusive prices for the various types of surgical procedures performed by Omni's physicians. *Id.* ¶¶ 2, 4, 5, 107. These fixed prices were substantially less than the "usual and customary" charges reflected on Coral Gables' invoices. *Id.*

Omni submitted the following materials directly to its patients' personal injury attorneys for the inclusion in settlement demands against State Farm: a cover letter on Omni's letterhead, Omni's account ledger reflecting Omni's charges for the professional component of rendered services, and a line item for the surgical charges incurred at Coral Gables, and the operative report. *Id.* ¶¶ 5, 109–111. The line item on Omni's account ledger for Coral Gables surgery charges reflected the full "usual and customary" amount, but did not disclose the lower, all-inclusive fixed price that the parties allegedly negotiated. *Id.* ¶¶ 105–107. This resulted in an "enormous difference" between what Omni paid to Coral Gables and "the surgical facility 'charges from Coral Gables listed on Omni's ledger.'" *Id.* ¶ 108

Under both the Metropolitan Arrangement and the Coral Gables Arrangement, the patients' personal injury attorneys utilized the packages from Omni and CBO to create demand packages, and sent those packages to State Farm. *Id.* ¶¶ 85, 112. The demand packages included a letter allegedly crafted to exert pressure on State Farm to settle the claims within a short time

by threatening bad faith claims.[4] *Id.* ¶¶ 86–90, 113. Thereafter, State Farm evaluated the settlement demands, as well as the medical records, invoices and the other documentation supplied to substantiate the claims. *Id.* ¶ 91, 114–121, 130. State Farm alleges it was unaware of the payment arrangements between the Medical Practices[5] and the Surgical Facilities.[6] *Id.* ¶ 5, 118. As a result, State Farm alleges it was deceived because it based its settlement offers and payments on the higher "usual and customary" rate. *Id.* ¶¶ 2, 4, 5, 26, 27, 92 106–08.

As a result of both arrangements, State Farm alleges damages in excess of $3.8 million. *Id.* ¶ 167. State Farm settled claims totaling more than $3.6 million pursuant to the Metropolitan Scheme and $300,000 pursuant to the Coral Gables Scheme. *Id.* ¶ 10. Under both of these referral arrangements the Medical Practices benefitted by receiving payment from their patients' settlements with State Farm based on the amounts listed in the Surgical Facilities invoices— which were "significantly higher" than the amount that the Medical Practices actually paid the Surgical Facilities. *Id.* ¶ 5. The Surgical Facilities, in exchange for providing "inflated" invoices to the Medical Practice, benefitted by receiving a steady flow of patients and guaranteed cash flow from the Medical Practices. *Id.* ¶¶ 5–7. As a result of their ownership interests,[7] Triana, Mevorah, and Cereceda (the "Individual Defendants") benefited from the allegedly unlawful referral arrangements. *Id.* ¶¶ 21–23.

---

[4] If an insurer declines to settle within policy limits, it may be found liable for "bad faith," and be required to pay compensatory and consequential damages, attorney's fees and punitive damages. *See generally* Fla. Stat. § 624.155.

[5] The "Medical Practices" refers to Calhoun and Omni.

[6] The "Surgical Facilities" refers to Metropolitan and Coral Gables.

[7] Defendant Triana has an ownership interest in Defendants Calhoun and Omni. *Id.* ¶ 23. Defendant Mevorah has an ownership interest in Defendant Calhoun. *Id.* ¶¶ 20, 22. Defendant Cereceda has an ownership interest in Defendants Calhoun and CBO, as well as in non-party Waterford. *Id.* ¶¶ 20–21.

Against this backdrop, State Farm seeks damages under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–501.213 (Counts I and II) and under the common law theories of fraud and unjust enrichment (Counts III and IV, respectively). Additionally, State Farm seeks a declaration that it is not liable for payment on any as-yet unpaid claims generated by the scheme under the Declaratory Judgment Act, 28 U.S.C. § 2201 (Count V).

The defendants moved to dismiss Plaintiff's Amended Complaint, arguing that Plaintiff has failed to state a claim upon which relief can be granted. *See* Metropolitan's Motion to Dismiss ("Metropolitan's Motion") (ECF No. 60); Calhoun, CBO, Mevorah, and Cereceda's Motion to Dismiss ("Calhoun's Motion") (ECF No. 61).[8] Additionally, the Calhoun Defendants[9] argue that the case should be dismissed because Plaintiff failed to join necessary parties. *See* Calhoun's Motion at 19.

Plaintiff filed a response, in which it maintains that it has sufficiently pled facts to survive the Motion to Dismiss and that it did not fail to join any necessary parties. *See* Plaintiff's

---

[8] As previously noted, Coral Gables also filed a Motion to Dismiss (ECF No. 62), but Plaintiff and Coral Gables filed a Joint Stipulation (ECF No. 131) dismissing Coral Gables from this action. The Court subsequently dismissed Coral Gables from this case and denied Coral Gables' pending Motion to Dismiss as moot. *See* September 25, 2017 Paperless Order (ECF No. 132). Although Coral Gables' Motion to Dismiss ("CG's Motion") is now moot, the arguments made within CG's Motion and within Coral Gables' Reply in Support ("CG's Reply") (ECF No. 77) are considered by the Court to the extent they are applicable to the remaining defendants.

[9] For purposes of this Order, "Calhoun Defendants" refers to those defendants who filed the Calhoun Motion (ECF No. 61), along with Omni and Triana because they adopted the motion. *See* Notice of Joinder (ECF No. 63). Because Omni and Triana have filed a Notice of Joinder (ECF No. 63) concerning Calhoun's Motion to Dismiss and a Notice of Joinder (ECF No. 78) concerning Calhoun's Reply in Support of its Motion to Dismiss, any disposition to any claim applicable to Omni and/or Triana as a result of this Court's adjudication of Calhoun's Motion will also apply to Omni and Triana. *See Sec. & Exch. Comm'n v. Levin*, No. 1:12-CV-21917-UU, 2014 WL 11878357, at *1 (S.D. Fla. Oct. 6, 2014) (considering arguments raised in a motion "to the extent they are applicable" to the party that had filed notice of joinder to that motion).

Combined Response in Opposition to Defendants' Motions to Dismiss Amended Complaint ("Opp.") (ECF No. 68). Defendants replied. *See* Metropolitan's Reply in Support of Its Motion to Dismiss Amended Complaint ("Metropolitan's Reply") (ECF No. 75); Calhoun Defendants' Reply Memorandum in Support of Motion to Dismiss First Amended Complaint ("Calhoun's Reply") (ECF No. 61).

## II.     LEGAL STANDARD

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group. Inc.*, 835 F.2d 270, 272 (11th Cir. 1988), *cert. denied sub nom. Peat Marwick Main & Co. Tew*, 486 U.S 1055 (1988).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must contain enough facts to indicate the presence of the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt. Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). However, as long as the allegations rise above a speculative level, a well-pleaded complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) (overruled on other grounds by *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1959–60 (2007) (internal quotation marks and citation omitted)).

**III.    DISCUSSION**

A.  Standard Medical Billing Practice

At the outset, the Court addresses Metropolitan's argument that each of Plaintiff's claims fail because the "scheme" in the Amended Complaint actually describes a common medical billing practice. *See* Metropolitan's Motion at 5–7. The Court also considers the similar argument that the FDUTPA claims fail because the Amended Complaint "describes the usual and customary practices of medical billing." CG's Motion at 8 n.4. These arguments fail for two reasons.

First, "[i]n evaluating whether a complaint should be dismissed under Rule 12(b)(6) for failure to state a claim, a court is generally limited to reviewing what is within the four corners of the complaint." *Hayes v. U.S. Bank Nat'l Ass'n*, 648 Fed. Appx. 883, 887 (11th Cir. Apr. 21, 2016); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). Notably, "[i]ndustry custom and practice" cannot "be the subject of judicial notice" in the absence of evidence or agreement by the parties. *See Nadherny v. Roseland Prop. Co., Inc.*, 390 F.3d 44, 51–52 (1st Cir. 2004).

Metropolitan attempts to evade this restriction by couching its argument in the language found in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *See* Metropolitan's Motion at 5. Specifically, Metropolitan argues it is "implausible" that Plaintiff would not be aware that the method of billing featured in the Amended Complaint is a common practice. *See id.* However, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that *the defendant is liable*

*for the misconduct alleged.*" *Iqbal*, 556 U.S. at 678 (emphasis added). "The plausibility standard . . . asks for more than a sheer possibility that *a defendant has acted* unlawfully." *Id.* (emphasis added). In other words, the plausibility assessment on a motion to dismiss concerns whether it is plausible that a defendant has acted in a certain way. Simply put, it is not proper for a court, on a motion to dismiss, to speculate as to a Plaintiff's knowledge as to the pervasiveness of a certain practice.[10]

Relatedly, the Court rejects the argument that Plaintiff's FDUTPA claim fails because Plaintiff—as an experienced insurance company—should be aware of the "usual and customary" billing practices alleged and thus Plaintiff has failed to "reasonably avoid the injury." *See* CG Motion at 8 n.4 (citing *Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. 3d DCA 2014)). The Eleventh Circuit has made clear that FDUTPA does not require "subjective proof of deception" wherein a "plaintiff could not secure FDUTPA relief" solely because it "knew the defendant's business well enough to manage the risk." *Democratic Republic of the Congo v. Air Capital Grp., LLC*, 614 F. App'x 460, 471 (11th Cir. 2015). In fact, the Eleventh Circuit explicitly rejected the "subjective element" that some courts (including the *Porsche Cars* Court) "have injected" into FDUTPA, and, instead, adopted the "objective" standard set forth by the Florida Supreme Court in *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). *Id.* at 471 n.7.

---

[10] The Court also rejects Metropolitan's attempts to have the court judicially notice instances in other cases where courts have ruled on motions in limine either to exclude documents evincing amounts actually paid or to include documents evincing the "full amount of the charges . . . ." *See* Metropolitan Motion at 7 (citing Exhibit 1 at 2–3). The highly fact-specific evidentiary determinations cited by Metropolitan do not convince this Court to upend settled jurisprudence regarding what may be considered on a motion to dismiss.

As a result, the "law now permits recovery if the plaintiff proves she was injured by an objectively deceptive act or statement." *Id.* at 471. "Whether [specific] conduct constitutes an unfair or deceptive trade practice is a question of fact for the jury to determine." *Nature's Prod., Inc. v. Natrol, Inc.*, 990 F. Supp. 2d 1307, 1322 (S.D. Fla. 2013); *see also Felice v. Invicta Watch Co. of Am., Inc.*, No. 16-CV-62772-RLR, 2017 WL 3336715, at *4 (S.D. Fla. Aug. 4, 2017) (on motion to dismiss, rejecting argument that a reasonable plaintiff would not have been deceived by misrepresentations); *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1290–91 (M.D. Fla. 2009) ("The argument that plaintiff should have reasonably foreseen the deception and mitigated damages is, at best, an affirmative defense which will not support a motion to dismiss.").[11] Similarly, the Florida Supreme Court eliminated the requirement that reliance be "reasonable" or "justifiable" for a Plaintiff to prevail on a fraud claim. *See Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (emphasis added). Thus, Metropolitan's assertion that it is implausible for State Farm to have been misled by the invoices or demand packages is simply irrelevant to this Court's analysis at this stage.

Second, even if the alleged billing practice were common, such prevalence would not be dispositive as to its legality. *Cf. Grace & Co. v. City of Los Angeles*, 278 F.2d 771, 774 (9th Cir. 1960) ("Observance of a custom or practice . . . does not conclusively establish the legal standard."); *Emmenegger v. Bull Moose Tube Co.*, 33 F. Supp. 2d 1127, 1137 (E.D. Mo. 1998) (finding that certain billing practice is unlawful despite it being the "prevailing practice in this

---

[11] Moreover, the prevalence of a billing practice—or even awareness of it—does not inform the Court whether the practice is objectively deceptive. *See James D. Hinson Elec. Contracting Co. v. BellSouth Telecommunications, Inc.*, 275 F.R.D. 638, 646 (M.D. Fla. 2011) (Class members' "alleged awareness that BellSouth was charging indirect costs, however, is simply not relevant to the issue of whether BellSouth was deceptive by charging amounts that it was not entitled to recover under Florida law.").

and most other areas"); *United States v. Khamsouk*, 54 M.J. 742, 747 n.2 (N-M. Ct. Crim. App. 2001), *decision set aside on other grounds*, 57 M.J. 282 (C.A.A.F. 2002) ("We recognize that simply because this is common practice does not mean that the practice is legally correct."). Defendants have cited no caselaw supporting a contrary position, and the Court is aware of none. Accordingly, the Court rejects, at this stage in the proceedings, arguments for dismissal premised on the allegation that the billing practices at issue are "usual and customary."

B.  Common Law Fraud (Count III)

Defendants argue that dismissal of Plaintiff's common law fraud claim is appropriate for two reasons. First, Defendants argue the Amended Complaint fails to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Second, the Calhoun Defendants argue that the fraud claim fails because it seeks to create a private right of action for statutes that otherwise do not provide for one. For the reasons set forth below, the Court grants in parts and denies in part Defendants' motions to dismiss the fraud claim.

1)  Whether Fraud Claim is Plead with the Particularity Required by Rule 9(b)

Defendants move to dismiss Count III because Plaintiff does not plead the required elements for fraud with sufficient particularity to comply with Federal Rule of Civil Procedure 9(b). Under Florida law,[12] the essential elements of common law fraud are: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (citation and internal quotations omitted). In certain circumstances, "[f]raud also includes the

_____

[12]  As the Court has jurisdiction through diversity of citizenship, it "is bound to apply the substantive law of the state in which it is located." *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1118 (11th Cir. 1990).

intentional omission of a material fact." *Ward v. Atl. Sec. Bank*, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001).

As Defendants note, the Federal Rules of Civil Procedure require a plaintiff to "state with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b). Under Rule 9(b), a fraud-plaintiff must allege (a) the precise statements, documents, or misrepresentations made; (b) the time, place, and person responsible for the statement; (c) the content and manner in which these statements misled the plaintiffs; and (d) what the defendants gained by the alleged fraud. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997).

For the reasons set forth below, the Court finds that the Amended Complaint contains sufficient allegations to satisfy both the Rule 9(b) requirements and the common law fraud elements as to Defendants CBO, Calhoun, Omni, and Metropolitan. Because the same allegations support both analyses, the Court addresses the common law fraud elements within the Rule 9(b) framework.

*a) The Precise Statements, Documents, or Misrepresentations Made*

Plaintiff alleges two different sets of misrepresentations. First, the Amended Complaint states that the Metropolitan and Coral Gables created invoices, which contained false and/or materially misleading statements. *See* Am. Compl. at ¶¶ 4–6, 67, 70–72, 103, 105, 107, 108, 120. Second, the Amended Complaint states that Calhoun, Omni, and CBO created demand packages, which contained false and/or materially misleading statements. *Id.* at ¶¶ 74–83, 102–111, 158.

For the reasons below, the Court finds that the Amended Complaint alleges sufficient details concerning the misrepresentations made by Metropolitan, Omni, CBO, and Calhoun.[13] In addition to identifying the precise misrepresentation made, these same allegations satisfy the first two elements of common law fraud.

*i.    Metropolitan's Invoices*

Plaintiff alleges that Metropolitan's invoices itemized charges for each patient's surgery and reflected charges for each of the supplies and services purportedly rendered. *Id.* ¶ 71. The invoices showed the total amount of Metropolitan's charges as an "unpaid balance." *Id.* ¶ 71. These invoices did not reflect any adjustments or credits to the patient's account for Calhoun's payments or indicate that Metropolitan had been paid by Calhoun and accepted such payments as payment in full. *Id.* Notably, these invoices affirmatively represented that there were no "adjustments" or "payments" which could have affected the "balance." *See* Ex. 5 to Am. Compl. at 3. The Complaint includes specifics pertaining to the discrepancy between the amount claimed and the amount actually paid—which sometimes exceeded an order of magnitude. For example, Calhoun performed a surgical procedure on patient M.C.'s neck. Am. Compl. ¶ 72. In connection with this procedure, Metropolitan's invoice reflected charges of $101,938.93, but Calhoun only paid Metropolitan $8,063 for its services. *Id.*

In addition to identifying the precise misrepresentation made, these allegations satisfy the first two elements of common law fraud. First, Metropolitan allegedly made a false statement of material fact regarding the "balance" owed for its services. Second, drawing all reasonable

---

[13] The Court does not address the alleged misrepresentations made by Coral Gables as they have been dismissed from this action.

inferences in Plaintiff's favor,[14] the allegations show that Metropolitan knew the falsity of its misrepresentation because it was already paid a lesser amount for its services prior to generating these invoices purportedly reflecting the "balance." *See* Am. Compl. ¶ 70.

ii.    *CBO (on behalf of Calhoun)'s Demand Packages*

After receiving Metropolitan's invoices, CBO, on behalf of Calhoun, would package them for transmission to the patients' personal injury attorneys. *See* Am. Compl. ¶ 74. Calhoun instructed CBO via a Surgery Check List to include in each package, a cover letter, "all ledgers: hospital, professional, and implant" and the operative report. *Id.* ¶¶ 76–82. CBO followed these instructions and provided packets to patients' attorneys, which typically included a cover letter on Calhoun's letterhead, Metropolitan's invoice, and Calhoun's account ledger reflecting Calhoun's charges. *Id.* ¶ 82–83. CBO and Calhoun "knew the purpose" of these packages was to provide information for the patients' attorneys to use in demands to insurance companies, and thereby "stake" Calhoun's claim to money from any settlements or judgments the patients obtained. *Id.* ¶ 75.

The cover letters written on Calhoun letterhead explained: "Please find the attached surgical bills and operative report for your client [ ]. The total charges are divided into two parts: hospital and surgeon's fee. The hospital bill includes . . . all services rendered. . . . Your office will not receive additional billing from any other facility regarding this surgery." *Id.* ¶ 83; Exhibit 7. These letters did not disclose the amount Calhoun actually paid Metropolitan. *Id.* ¶ 67, 84. In fact, the example letter attached to the Amended Complaint includes the same amount under hospital fees as is reflected in the "balance" of Metropolitan's invoice. *See* Ex. 7 to Am. Compl. Because Plaintiff is entitled to all reasonable inferences that can be drawn from the well-

---

[14] *See, e.g.*, *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010).

pleaded allegations of the Amended Complaint, these communications misleadingly "suggested that [Calhoun] was simply charging the insurers the actual amount that [it] would ultimately pay [Metropolitan]." *United States v. Sharp*, 749 F.3d 1267 (10th Cir. 2014) (finding that a similar misleading suggestion was sufficient to show fraudulent misrepresentation in a criminal case).

In addition to identifying the precise misrepresentation made, these allegations also satisfy the first two elements of common law fraud as to Calhoun and CBO.[15] They explain that CBO, at the behest of Calhoun, made "a false statement of material fact" regarding the "balance" owed for Metropolitan's services. Additionally, the allegations show that Calhoun knew the falsity of its misrepresentation because it had already paid a lesser amount prior to generating these invoices purportedly reflecting the "balance." *See* Am. Compl. ¶ 70. While plaintiff provides only general allegations that CBO made those statements knowing they were false, *id.* ¶ 158, "Rule 9(b) permits states of mind, including knowledge, to be pled generally." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 88 (11th Cir. 2008).

### iii. Omni's Demand Packages

After receiving Metropolitan's and Coral Gables' invoices, Omni would package those invoices for transmission to the patients' personal injury attorneys. *See* Am. Compl. ¶ 102–105. In both cases, Omni and its owners "knew" these invoices were being delivered so that Omni

---

[15] Even though Calhoun did not create the misleading invoices, these allegations reveal sufficient involvement in the alleged creation of the invoices such that the fraud claim against Calhoun survives dismissal. *See, e.g.*, *Altamonte Springs*, 2011 WL 6450769 at *4 (reasoning that the complaint sufficiently alleged the individual defendant's "personal involvement in the alleged scheme"); *KJ Chriopractic Center*, 2014 WL 12617566, at *4 (finding plaintiff had alleged "specific instances of conduct sufficient to inform each Defendant of its individual role in the alleged scheme," where it alleged that the individual defendants had "loaned their names and chiropractic licenses so that the clinics would appear to be legitimate" and legal).

could attempt to collect the stated charges from the patients after the patients' personal injury attorneys included such charges in a demand to an insurer. *Id.* ¶ 103, 107.

Omni included Metropolitan's invoices, which purported to show the total amount of Metropolitan's charges as an unpaid "balance." *Id.* ¶¶ 102–103. Metropolitan's invoices did not reflect any adjustments or credits to the patient's account for Calhoun's payments or indicate that Metropolitan had been paid by Calhoun and accepted such payments as payment in full. *Id.* ¶ 103. Notably, Metropolitan's invoices affirmatively represented that there were no "adjustments" or "payments" which could have affected the "balance." *See* Exhibit 5 at 3. Omni's payment to Metropolitan was a "fraction" of the amount stated in the invoice that Omni caused to be submitted to State Farm. *Id.* ¶ 102.

Similarly, after receipt of Coral Gables' invoices, which "purported to reflect the surgical facility's usual and customary charges for the services provided" and "never accounted for the fact that Coral Gables agreed to a pre-arranged price from Omni" for the services it provided, *id.* ¶ 107, Omni provided packets to patients attorneys. *Id.* ¶ 109. These packets typically included a cover letter and Omni's account ledger reflecting Omni's charges and a line entry for the charges at Coral Gables. *Id.* ¶ 109. The packages sent by Omni included the full amount of Coral Gables' bills as a line item in the total amount purportedly due and owing. *Id.* ¶ 111. As a result, the "surgical facility 'charges from Coral Gables listed on Omni's ledger'" were "enormous[ly] differen[t]" from what Omni actually paid to Coral Gables. *Id.* ¶ 108. The cover letters, which were on Omni letterhead, disclosed that Omni purchased Coral Gables' receivables. *Id.* ¶ 108, 110; *see also* Ex. 10 to Am. Compl. However, the letters did not disclose the amount Omni

actually paid to Coral Gables was, in at least one case, about one-tenth of the now-claimed amount. *Id.* ¶ 108, 110.[16]

In addition to identifying the precise misrepresentation made, these allegations satisfy the first two elements of common law fraud as to Omni. They show that Omni made "a false statement of material fact" regarding the amount the patient owed for Coral Gables' and Metropolitan's services. *See, e.g.*, Am. Compl. ¶ 111 ("the packages sent by Omni included the full amount of Coral Gables' bill as a line item in the total amount purportedly due and owing"). Because Plaintiff is entitled to all reasonable inferences that can be drawn from the well-pleaded allegations, Omni's communications plausibly "suggested that [it] was simply charging the insurers the actual amount that [it] would ultimately pay [Coral Gables or Metropolitan]." *United States v. Sharp*, 749 F.3d 1267 (10th Cir. 2014) (finding that a similar misleading suggestion was sufficient to show fraudulent misrepresentation in a criminal case).[17] Additionally, the allegations create the reasonable inference that Omni knew the falsity of its misrepresentation because it already paid a lesser amount for the line-item charge prior to generating these demand packages purportedly reflecting the balance. *See* Am. Compl. ¶¶ 108, 110; *see also id.* at 158 ("Defendants knew the invoices and supporting documentation contained false representations and omissions of material fact.").

---

[16] The example package includes $24,516 in hospital fees in both its cover letter and as a line-item in the ledger. Ex. 10 to Am. Compl. at 1–2. However, Omni only paid Coral Gables $2,500 for Coral Gables' services. *Id.* ¶ 108.

[17] It would not be appropriate, at this stage in the litigation, for the Court to conclude that the practice of paying a discounted price but billing based on usual and customary costs is a practice so common that a reasonable insurer would not have been misled by these statements. *See* Section III.A. *supra*.

*b) The Time, Place, and Person Responsible for the Statement*

Defendants next argue that Plaintiff has failed to specify with particularity the circumstances as to "who, what, when, where, and how the fraudulent claim was submitted or the false record or statement made." *See* Calhoun's Motion at 11–14 (citing *Hopper v Solvay Pharms. Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009)); *see also* Metropolitan's Motion at 4–5, 8.

The purpose of the particularity rule in fraud actions is to "alert[] defendants to the precise misconduct with which they are charged and [to] protect[] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir.2001) (quotations and citations omitted). Courts recognize, however, that if alleged fraudulent conduct occurs over an extended period of time, and the acts are numerous, the specificity requirements of Rule 9(b) are applied less stringently to avoid "substantial unfairness to private litigants who could not possible have detailed knowledge of all the circumstances surrounding the alleged fraud." *MeterLogic, Inc. v. Copier Sols., Inc.*, 126 F. Supp. 2d 1346, 1361 (S.D. Fla. 2000) (holding that plaintiff "need not provide the exact time and place"). Moreover, "a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading" found in Rule 8. *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (quoting *Friedlander v. Nims*, 755 F.2d 810, 813 n. 3 (11th Cir.1985))).

Although the Amended Complaint provides some information regarding the time and place of the misleading deceptive claim submissions, it does not allege the exact date and time every false statement was made. However, the Amended Complaint and its attached exhibits, provide patients' initials, claim numbers, the dates of settlements, settlement amounts, the

corresponding charges from the Medical Practices and the Surgical Facilities, along with example invoices and demand letters, which include alleged misrepresentations. *See, e.g.*, Exhibits 1, 3–5, 7–11. Taken together, this information is sufficient to "alert" Defendants to the charges they are being accused of fraudulently inflating.

Although Amended Complaint alleges that Metropolitan, CBO, Calhoun, and Omni created false statements, *see* Section III.B.1.a, *supra*, Plaintiff admits it does not know the specific persons "employed or utilized by the entity Defendants to make the fraudulent representations." *See* Opp. at 11. Plaintiff argues that such allegations are unnecessary at this time. Opp. at 11.

While the Court agrees that such allegations are unnecessary to establish liability for fraud against the entity defendants here, it disagrees that the fraud claim survives against the Triana, Cerceda, and Mevorah (the "Individual Defendants"). Simply put, there are no well-pleaded allegations specifically claiming that the Individual Defendants created any false statements. Rather, all references to the Individual Defendants are conclusory. *See, e.g.*, Am. Compl. ¶ 160 ("Defendants are jointly liable for the false representations and omissions of material facts contained in the invoices and supporting documentation generated by the Medical Practice because they each played an essential role as the orchestrators of the Unlawful Referral Arrangement.").

The cases that Plaintiff cites—*State Farm Mutual Automobile Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*, No. 611-cv-1373, 2011 WL 6450769, at *4 (M.D. Fla. Dec. 21, 2011) and *Gov't Emps. Ins. Co. v. KJ Chiropractic Ctr. LLC*, No. 6:12-cv-1138, 2014 WL 12617566, at *4 (M.D. Fla. Mar. 6, 2014))—are inapposite and do not remedy this defect. In *Altamonte Springs*, the court specifically found that the complaint sufficiently alleged the

individual defendant's "personal involvement in the alleged scheme." 2011 WL 6450769 at *4. Similarly, in *KJ Chiropractic Center*, the Court found that the plaintiff had alleged "specific instances of conduct sufficient to inform each Defendant of its individual role in the alleged scheme," including alleging that the individual defendants had "loaned their names and chiropractic licenses so that the clinics would appear to be legitimate" and legal. 2014 WL 12617566, at *4. By contrast, there are no well-pleaded allegations here that the Individual Defendants involved themselves in the scheme in any way other than through their ownership interests in the entity defendants.[18]

Accordingly, Count III is DISMISSED WITHOUT PREJUDICE against Mevorah, Cereceda, and Triana.

### c) The Content and Manner in Which These Statements Misled the Plaintiffs

The Amended Complaint details how the misrepresentations discussed in section III.B.1.a, *supra*, misled State Farm. State Farm received demand packages from its customers' attorneys, which included materials generated by Metropolitan, CBO (on behalf of Calhoun), and Omni.[19] *See, e.g.*, Am. Compl. ¶¶ 85, 88, 92, 109–113. State Farm relied upon these representations in evaluating settlements of claims identified in Exhibit 11, while unaware of the arrangements undergirding the claims. *See, e.g.*, *id*. ¶¶ 113–120. The representations "grossly inflated the value of the patients' personal injury claims and caused State Farm to pay significant settlement amounts based upon false information." *Id.* ¶ 7. Significant sums were paid within

---

[18] Additionally, although not argued, the Court declines to pierce the corporate veil here. *See Krinsk v. SunTrust Banks, Inc.*, No. 8:09-CV-909-T-27EAJ, 2010 WL 11475608, at *6 (M.D. Fla. Jan. 8, 2010) (declining to pierce corporate veil where plaintiff has not plead facts supporting shareholder had domination and control over corporate defendant).

[19] Notably, there is no allegation that State Farm has ever received Coral Gables' bills because Omni did not include them in the demand package. *See* Am. Compl. ¶¶ 109–113.

available policy limits to avoid the risk of exposing State Farm insureds to potential excess verdicts, as well as to avoid the threat of bad faith lawsuits. *Id.*

In addition to detailing the manner in which Plaintiff was deceived, the Amended Complaint also contains sufficient allegations to satisfy the last two elements of common law fraud. First, the same allegations supporting the manner in which Plaintiff was misled readily demonstrate the "consequent injury by the party acting in reliance on the representation," *Butler*, 44 So. 3d at 105, which is the fourth element of common-law fraud. Specifically, Plaintiff made settlement payments based on misrepresentations found in the invoices and demand packages.

Second, the Court finds that the Amended Complaint also satisfies the third element of common law fraud—an intention that the representation induce another to act on it—against Metropolitan, Calhoun, CBO, and Omni. The Amended Complaint alleges that Defendants created these invoices and caused them to be submitted to State Farm in order to "induce State Farm to pay claims" based upon the misrepresentations contained therein. Am. Compl. ¶ 159. Defendants' "intent to injure, defraud, or deceive" Plaintiff is also readily inferred from the allegations of the Amended Complaint. *See, e.g.*, Am. Compl. at ¶ 26 ("to accomplish their common purpose of defrauding State Farm through the scheme . . . ."); *id.* ¶ 55 ("Calhoun, its owners, CBO (on behalf of Calhoun), and Metropolitan knew that these invoices were being delivered so Calhoun could deliver them to the patients' personal injury attorneys to be included in a demand package to an insurer such as State Farm."). Because "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), the Court finds these allegations sufficient to satisfy the third element of common-law fraud.

*d) What Defendants Gained by the Alleged Fraud*

The Amended Complaint alleges that the Surgical Facilities received a guaranteed, albeit secret, cash flow. *See, e.g.*, Am. Compl. (ECF No. 56) at ¶¶ 5, 6, 24, 25, 66–70, 99, 102–107, 133, 140, 145, 151, 156, 157, 160, 163, 166. It also alleges that the Medical Practices received the ability to take possession of the Surgical Facilities bills and, upon settlement, recoup profit over and above the amount of the secret payments it made. (*Id.* at ¶¶5, 6, 57, 60–62, 67, 70, 72, 75, 78, 83, 99, 102, 103, 105–108, 110–112, 133, 140, 145, 151, 160, 166, & Exhs. 6–7, 10). The higher the purported medical expenses, the more likely the insurers would settle the claim for higher amounts. Am. Compl. ¶¶1, 40, 59–61, 70, 73, 75–83, 103, 107, 110, 130, Ex. 3, Ex. 6, Ex. 7, Ex. 10. Had State Farm been aware of the arrangements, it would not have paid the settlements featured in Exhibit 11 because, at a minimum, it would have evaluated the claims based on the amounts paid by the Medical Practice to the Surgical Facilities instead of the stated "artificial amounts included in the demand packages." Am. Compl. ¶ 121.

### 2)  Whether the Lack of Statutory Private Right of Action Bars Fraud Claim

The Calhoun Defendants next argue that the fraud claim fails because it seeks to create a private right of action for statutes that otherwise do not provide for one. *See* Calhoun's Motion at 6–8. The Court disagrees. Under Florida law, "[w]hether a statutory remedy is exclusive or merely cumulative depends upon the legislative intent as manifested in the language of the statute." *Thornber v. City of Ft. Walton Beach*, 568 So.2d 914, 918 (Fla. 1990). "Even where the legislature acts in a particular area, the common law remains in effect in that area unless the statute specifically says otherwise." *State v. Ashley*, 701 So.2d 338, 341 (Fla.1997); *see also Essex Ins. Co. v. Zota*, 985 So.2d 1036, 1048 (Fla.2008) ("A statute . . . . designed to change the common law rule must speak in clear, unequivocal terms, for the presumption is that no change

in the common law is intended unless the statute is explicit in this regard." (quoting *Carlile v. Game & Fresh Water Fish Comm'n*, 354 So.2d 362, 364 (Fla.1977))). "Unless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, the statute will not be held to have changed the common law." *Thornber*, 568 So.2d at 918. None of the statutes featured in the Amended Complaint explicitly precludes an insurer from bringing a claim for common law fraud.[20] In fact, some expressly provide the opposite. *See, e.g.*, Fla. Stat. § 817.505(7) ("The provisions of this section are in addition to any other civil, administrative, or criminal actions provided by law and may be imposed against both corporate and individual defendants."). Nor is any statute "so repugnant to the common law that the two cannot coexist." *Thornber*, 568 So.2d at 918.

Accordingly, the Court declines to dismiss Plaintiff's Count III on those grounds, and it survives as to Defendants CBO, Calhoun, Metropolitan, and Omni.

C.  Florida Deceptive and Unfair Trade Practices Act (Counts I and II)

Plaintiff lodges two claims under the Florida Deceptive and Unfair Trade Practices Act (or "FDUTPA"), Fla Stat. § 502.201 *et seq*. The first is against Calhoun, Omni, Metropolitan, CBO, Cereceda, Triana, and Mevorah (Am. Compl. ¶¶ 131–142); the second is against Omni, Triana, and Coral Gables (Am. Compl. ¶¶ 143–153).

Defendants argue that Plaintiff's FDUTPA claims fail for three reasons. First, Metropolitan argues that FDUTPA does not apply to the conduct at issue because such conduct

---

[20] Although the insurance fraud criminal statute, Fla. Stat. § 817.234(5), provides that an insurer may bring an action upon an adjudication of guilt under that statute, "nothing in this statute provides that a cause of action exists only if there is a conviction, or that other causes of action are pre-empted." *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1287 (M.D. Fla. 2009) (discussing Fla. Stat. Ann. § 627.736(12), which similarly provides an insurer a "cause of action against any person convicted of, or who, regardless of adjudication of guilt, pleads guilty or nolo contendere to insurance fraud under s. 817.234").

does not constitute "trade or commerce." Second, Metropolitan and Calhoun Defendants argue that the FDUTPA claims fail because they lack a statutory predicate. Third, Calhoun Defendants argue that the FDUTPA claim fails because the Amended Complaint fails to plead with the particularity required by Rule 9(b). For the reasons discussed below, dismissal of the FDUTPA claims (Counts I and II) against Metropolitan, CBO, Calhoun, and Omni is inappropriate, but dismissal of those Counts is appropriate against Cereceda, Triana, and Mevorah.

1)  Whether Conduct at Issue Constitutes "Trade or Commerce"

Metropolitan argues that FDUTPA does not apply to the conduct alleged in the Amended Complaint because conduct in pursuit of legal remedies, such as a settlement, is not 'trade or commerce' under FDUTPA. Metropolitan's Motion at 13.

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (alteration in original) (quoting Fla. Stat. § 501.204(1)). FDUTPA defines "[t]rade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. Ann. § 501.203(8). "As such language clearly indicates, the definition of 'trade or commerce' is quite broad." *Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1305 (S.D. Fla. 2008). Additionally, FDUTPA requires that its provisions "be construed liberally" to, *inter alia*, "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

Heeding these provisions of FDUTPA, accepting the facts alleged in the Amended Complaint as true, and construing all reasonable inferences therefrom in the light most favorable to Plaintiff, the Court finds that the conduct alleged in the Amended Complaint falls within the definition of "trade or commerce." The Medical Practices and Surgical Centers provide healthcare to patients in exchange for a portion of their patients' legal recovery (in the form of settlement or otherwise) under the Letters of Protection. Am. Compl. ¶ 60–62. The Medical Practices and the Surgical Facilities have an arrangement under which the Medical Practices provide referrals to the Surgical Facilities in exchange for, *inter alia*, "inflated" invoices. *Id.* ¶ 70. As far as Plaintiff knows, this arrangement is neither disclosed to its patients (*i.e.* consumers) nor to State Farm. *Id.* ¶ 69, 102, 105, 116, 118, 120–121. The Surgical Facilities' inflated invoices are sent to the Medical Practice, which then sends them to either the accident victims' attorneys, or to CBO who then sends them to the accident victims' attorneys. *Id.* ¶¶ 6, 20, 62, 67, 70, 74, 75, 82–86. The Medical Practices and CBO omit any reference to the much smaller amount they actually paid the Surgical Centers. *Id.* ¶¶ 2, 4, 5, 107, 133. The attorneys then provide these bills as part of a settlement package to State Farm. *Id.* ¶¶ 75, 112.

At a minimum, the Surgical Centers' creation of the inflated bill pursuant to an alleged arrangement with the Medical Centers involves commerce. *See James D. Hinson Elec. Contracting Co., Inc.*, 642 F. Supp. 2d 1318 (finding "bill" sent by utility to excavator for repair of underground cable, that did not disclose corporate overhead and claims processing charges, was in "trade and commerce," as required for claim under FDUTPA); *see also State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Florida, Inc.*, 103 F. Supp. 3d 1343, 1354 (S.D. Fla. 2015) ("Fraudulent conduct in the context of billing for PIP benefits qualifies as a deceptive act for purposes of FDUTPA." (citations omitted)); *Baker v. Baptist Hosp., Inc.*, 115 So. 3d 1123, 1126

25

(Fla. Dist. Ct. App. 2013) ("[B]illing practices are considered part of 'trade or commerce.'"). Additionally, the rendering of healthcare services also falls within the definition of "trade or commerce." *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Florida, Inc.*, 103 F. Supp. 3d 1343, 1354 (S.D. Fla. 2015) ("Defendants engaged in unfair and deceptive acts and practices in the conduct of their trade and commerce by unlawfully operating medical clinics, in violation of Florida law."); *see also Fla. Stat.* § 501.203(8) (defining "[t]rade or commerce" as the "providing" of "any . . . service").

The Court rejects Metropolitan's arguments to the contrary, which invoke cases that either do not stand for the broad proposition claimed, or are entirely inapposite. For example, Metropolitan relies on *Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1376 (S.D. Fla. 2010), for the proposition that the solicitation or offer of a legal release in exchange for money does not equate to a "thing of value" as that term is used in the "trade or commerce" provision of FDUTPA. *See* Metropolitan's Motion at 13. However, the gravamen of the *Kelly* complaint was "the Palmer Law firm collects information from its retail clients and, utilizing sophisticated software, automatically generates misleading demand letters, calculates demand amounts and affixes a local attorney's signature to the demand letter, all without attorney review." *Id.* at 1363.[21] By contrast, the Amended Complaint focuses on the underlying conduct of entities that rendered a service and then created misleading bills. *Id.* at 1374. Moreover, unlike

---

[21]  In *Kelly*, plaintiffs received civil theft demand letters from a law firm, which threatened to file a lawsuit if payments were not made. *Kelly*, 681 F. Supp. 2d at 1363–64. Recipients of those letters filed a class action suit against the law firm alleging, among various claims, a violation of FDUTPA by that law firm. The district court granted summary judgment for the law firm on claims of FDUTPA violations, concluding that the plaintiffs did not satisfy the "'trade or commerce' element of FDUTPA." *Id.* at 1374.

the *Kelly* plaintiff, Plaintiff here does not contend the patients' lawyers did anything to distort the information that had been provided by the defendants.

Accordingly, the Court does not find it appropriate to dismiss Plaintiff's FDUTPA claims on the basis that the conduct alleged in the Amended Complaint does not involve "trade" or "commerce."

        2)   <u>Whether FDUTPA Claims Fail Because They Lack a Statutory Predicate</u>

Metropolitan and Calhoun Defendants argue that the FDUTPA claims[22] fail because none of the four violations of Florida law alleged in the Amended Complaint can serve as a statutory predicate for a FDUTPA claim. Metropolitan and Calhoun Defendants' argument is predicated on a misunderstanding of the statute.

A FDUTPA claim does not necessarily require the violation of a predicate statute. In order to state a FDUTPA claim, a plaintiff "must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). The first element may be satisfied in one of two ways: a per se violation or a traditional violation. *See, e.g.*, *Parr v. Maesbury Homes, Inc.*, No. 609CV-1268-ORL-19GJK, 2009 WL 5171770, at *7 (M.D. Fla. Dec. 22, 2009). In their motions, Metropolitan and Calhoun Defendants focus only on the first way: the *per se* FDUTPA violation, which requires a violation of a predicate statute. *See* Fla. Stat. § 501.203(3)(c) (a violation of any "law, statute, rule, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" may serve as a predicate for a FDUTPA claim). However, a

---

[22] Although the Metropolitan Motion and the Calhoun Motion are not filed by any defendants involved in the second FDUTPA claim (Omni, Triana, and Coral Gables), the Court considers the arguments presented by Metropolitan and Calhoun Defendants against both FDUTPA counts because (1) Omni and Triana joined the Calhoun Motion (ECF No. 63), and (2) as Calhoun Defendants note, "the two claims are essentially identical," Calhoun Motion at 8 n.2.

FDUTPA plaintiff may also satisfy the first element by showing a traditional violation, alleging defendants engaged in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *See* Fla. Stat. § 501.204(1).

Here, Plaintiff alleges that Defendants violated four statutes,[23] and also details the allegedly deceptive acts and practices of Defendants, *see, e.g.*, *id.* ¶¶ 133–139, 145–150; *see also* Section I, *supra*. The Court finds that Plaintiff's factual allegations establish traditional FDUTPA claims. Accordingly, the Court need not address arguments concerning a whether a per se claim is pled in order to determine whether the FDUTPA claims should be dismissed for failure to state a claim.

Although the statute does not define "unfair and deceptive act or practice," the provisions of the act are to be "construed liberally." *Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1333 (S.D. Fla. 2010) (quoting Fla. Stat. § 501.202(2)). A practice is unfair under the FDUTPA if it "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Beacon Prop. Mgmt., Inc.*, 842 So.2d at 777. A deceptive act occurs when a defendant makes "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015) (citing *Beacon Prop. Mgmt.*, 842 So.2d at 777). Importantly, "deception may be accomplished by innuendo" and through omissions "rather than

---

[23] Specifically, Plaintiff asserts that Defendants' conduct violates Florida Statutes §§ 817.505 (Patient Brokering Statute), 456.054 (Anti-Kickback Statute), 395.0185 (Anti-Rebate Statute) and 817.234 (Insurance Fraud). *See* Amended Complaint (ECF No. 56) ¶¶ 9, 51, 123–130.

outright false statements." *Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs, State of Fla.*, 761 So. 2d 1256, 1264 (Fla. Dist. Ct. App. 2000).

For the reasons discussed in Section III.B., *supra*, the Court concludes that the Amended Complaint sufficiently pleads that CBO, Calhoun, Metropolitan, and Omni have engaged in fraudulent practices via their invoices. Courts have held misrepresentations regarding invoices may support FDUTPA claims. S*ee, e.g.*, *James D. Hinson Elec. Contracting Co., Inc.*, 796 F. Supp. 2d at 1353 (inclusion of unrecoverable charges for "claims processing" in costs of damage to underground facilities billed to excavators); *Turner Greenberg Assocs., Inc. v. Pathman*, 885 So. 2d 1004, 1008 (Fla. 4th DCA 2004) (furniture store's collection of a freight/insurance charge in connection with financed furniture sales was a deceptive and unfair trade practice; fee was in reality a customer surcharge); *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. 3d DCA 2000) (charges invoiced as "port charges" but kept as profit held to violate FDUTPA).

Although not raised by Defendants, the Court notes that the causation and damages prongs for a FDUTPA claim are also satisfied here. Defendants allegedly submitted surgical charges for more than $3.8 million pursuant to the Metropolitan Arrangement and more than $172,000 pursuant to the Coral Gables Arrangement. Am. Compl. ¶ 10; *see also* Ex. 1 to Am. Compl. (containing chart of charges and settlements pursuant to each arrangement). State Farm claims representatives relied on the representation that the patients owed the amounts listed on the Medical Practice and/or Surgical Facilities' invoices or in the medical records, even though

due to the scheme, the patient did not owe those amounts. Am. Compl. ¶ 116.[24] If State Farm had known the truth of the arrangements among the Defendants, State Farm would have refrained from paying the settlement amounts that it paid because, *inter alia*, it would have evaluated the claims based on the amounts actually paid by the Medical Practice to the Surgical Facilities instead of the amounts stated in the invoices and demand packages. Am. Compl. ¶ 121. As a result of both allegedly unlawful referral arrangements, State Farm has been misled into paying millions of dollars of settlements. *Id.* ¶ 167; *see also* Exhibit 1.

Accordingly, the FDUTPA claims do not fail for a lack of statutory predicate.

### 3) Whether the Amended Complaint Pleads with Sufficient Particularity

Calhoun Defendants and Coral Gables argue that the FDUTPA claims should be dismissed because they are not pled with the particularity required by Rule 9(b).

Where a claim is grounded in fraud, the complaint must also comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*, 341 Fed. Appx. 487 (11th Cir. 2009) (unpub). Federal district courts have split as to whether FDUTPA claims are subject to Rule 9(b). *Compare Costa v. Kerzner Int'l Resorts, Inc.*, No. 11–60663–Civ, 2011 WL 2519244, at *2 (S.D. Fla. June 23, 2011) (finding Rule 9(b) does not apply) *with Llado–Carreno v. Guidant Corp.*, No. 09–20971, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (finding that Rule 9(b) does apply). However, where the gravamen of the claim sounds in fraud, as here, the heightened pleading standard of Rule 9(b) applies. *See, e.g.*, Blair v. Wachovia Mortg. Corp., No. 5:11-CV-566-OC-37TBS, 2012

---

[24] *See also* Exhibit 4 to Am. Compl. (showing a non-exhaustive list of pre-arranged prices for a number of common surgical procedures that Calhoun and Omni doctors performed at Metropolitan); Exhibit 5 (Metropolitan invoice); Exhibit 7 (Calhoun letter describing "attached surgical bills and operative report for your client"); Exhibit 10 (Omni letter describing "attached surgical bills and operative report for your client"); Exhibit 8 (copy of demand letter).

WL 868878, at *3–4 (M.D. Fla. Mar. 14, 2012); *Llado*, 2011 WL 705403 at *5 ( "the particularity requirement of Rule 9(b) applies to all claims that sound in fraud, regardless of whether those claims are grounded in state or federal law.")

Here, Plaintiff's Amended Complaint "sounds in fraud," *Llado*, 2011 WL 705403 at *5. The gravamen of the Amended Complaint is that Defendants engaged in a "fraudulent scheme" to "grossly inflate[]" the value of their patients' personal injury claims so that State Farm would "pay significant settlement amounts based upon false information." *See, e.g.*, Am. Compl. ¶¶ 6– 7. Accordingly, Rule 9(b) requires the allegations supporting the FDUTPA Counts to be pleaded with particularity.

For the reasons discussed in Section III.B.1 and III.C.2, the Court finds that the FDUTPA claims are adequately pled under Rule 9(b) against CBO, Metropolitan, Calhoun, and Omni. However, there are no well-pleaded allegations detailing the Individual Defendants' participation in any unfair or deceptive act. Rather, all references to the Individual Defendants are conclusory. *See, e.g.*, Am. Compl. ¶ 160. Accordingly, the FDUTPA claims survive as to CBO, Metropolitan, Calhoun, and Omni but are DISMISSED WITHOUT PREJUDICE as to Cereceda, Triana, and Mevorah.

### D. Unjust Enrichment (Count IV)

Plaintiff lodges an unjust enrichment claim against all Defendants. *Id.* ¶¶ 162–168. To state a cause of action for unjust enrichment, a complaint must allege that: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.

*Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013) (citation omitted).

Metropolitan and Calhoun Defendants argue that the claim fails for four reasons. First, Metropolitan and Calhoun Defendants argue that the claim fails because it relies on statutes which do not provide for a private right of action. Second, Metropolitan argues that the claim fails to state a claim because the Amended Complaint never alleges that it conferred any benefits to Metropolitan. Third, Calhoun Defendants argue that Plaintiff cannot pursue a quasi-contract claim for unjust enrichment because an express contract exists concerning the same subject matter. Fourth, Calhoun Defendants argue that the unjust enrichment claim fails because Plaintiff has received adequate consideration for the benefit conferred—namely the release of claims by the patients.

1)  Whether the Lack of Statutory Private Right of Action Bars Unjust
     Enrichment Claim

Defendants argue that Plaintiff cannot base its unjust enrichment claim on conduct that violates statutes for which there is no private right of action. However, "even though the statutes in question do not create private rights of action, Plaintiff may proceed with common law or other statutory causes of action that exist if the elements of those claims are properly stated." *Pincus v. Speedpay, Inc.*, 161 F. Supp. 3d 1150, 1156 (S.D. Fla. 2015). The Eleventh Circuit has permitted an unjust enrichment claim to lie even where the statute allegedly violated by defendants does not expressly provide for a judicial remedy. *See State Farm Fire & Casualty Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 583–84 (11th Cir. 2013) (permitting claim of unjust enrichment to lie where "the Act does not expressly refer to a judicial remedy").

A review of the Amended Complaint reveals that Plaintiff does not attempt to assert a private cause of action for Defendants' violation of the Patient-Brokering, Anti-Kickback, Anti-

Rebate, or Insurance Fraud Statutes, but rather contends that Defendants' conduct in violation of these statutes is unjust such that it would be wrong for them to retain benefits they received as a result of their wrongful conduct. *See, e.g.*, Am. Compl. ¶¶ 123–130; 162–168. Accordingly, the fact that Plaintiff alleges conduct in violation of statutes, which do not provide for a private right of action, is not fatal to Plaintiff's unjust enrichment claim.

> 2) Whether Complaint Alleges a Benefit Inequitably Accepted and Retained

Plaintiff alleges that it conferred a benefit upon Defendants by making payments on claims "which were not owed because they were the product of the Unlawful Referral Arrangement orchestrated by the Defendants." Am. Compl. ¶ 163. Essentially, State Farm argues that it "owed absolutely nothing for Defendants' services," Opp. at 34, because such services are "the product of an arrangement prohibited by Florida Statutes §§ 395.0185, 456.054, 817.505, 502.201 et. seq., and 817.234," Am. Compl. ¶ 174; *see also id.* ¶ 121 (alleging that the "unlawful nature of the brokering . . . makes all such claims not compensable.").

On first blush, Plaintiff's unjust enrichment theory fits within the framework outlined in *Silver Star*, 739 F.3d at 583–84. In that case, the Eleventh Circuit found that a defendant's violation of a licensing statute could provide a basis for an unjust enrichment claim because the defendant "accepted payments" that it was "not entitled to under Florida law" due to its violation of that statute. *Id.* The Court noted that the statute explicitly provided that "[a]ll charges or reimbursement claims made by or on behalf of a clinic that is required to be licensed under this part, but that is not so licensed, or that is otherwise operating in violation of this part, are unlawful charges, and therefore are noncompensable and unenforceable." *Id.* at 583. The Court reasoned that because the plain language of the statute provided that any charge or reimbursement claim by an unlicensed clinic was "unlawful . . . noncompensable and

unenforceable," it "would make no sense to read into" the statute a "provision that courts lack the authority to decide the crucial question on the lawfulness, compensability and enforceability" of such a claim. *Id.*

However, on a motion to dismiss, Plaintiff's legal conclusions are "not entitled to the assumption of truth," *Iqbal*, 556 U.S. at 680, including Plaintiff's assertion that these statutes make any amount paid by State Farm to Defendants "not owed," Am. Compl. ¶ 163. Assuming without deciding that the Amended Complaint sufficiently alleges violations of each of those statutes, the Court does not agree that Plaintiff owed nothing for Defendants' services merely because of these violations.

As mentioned previously, the Court in *Silver Star* permitted an unjust enrichment claim to stand because the statute at issue expressly provided that a claim from an unlicensed medical provider "is an unlawful charge and is noncompensable and unenforceable." Fla. Stat.§ 400.9935(3); *see Silver Star*, 739 F.3d at 583. However, unlike the statutes undergirding the *Silver Star* plaintiff's unjust enrichment claim, none of the statutes in question here provide that "[a]ll charges or reimbursement claims made" in violation of these statutes, are "unlawful" or "noncompensable" or "unenforceable," *Silver Star*, 739 F.3d at 583. Plaintiff does not cite any authority standing for the proposition that any services provided by a party violating one of the statutes in question are not owed or otherwise not enforceable.[25]

---

[25] The cases Plaintiff cites all address other statutes. *See* Opp. at 27–28 (citing State Farm Mutual Auto. Ins. Co. v. Silver Star Health & Rehab, 739 F.3d 579 (11th Cir. 2013) (violation of the Florida Health Care Clinic Act); *Pincus v. Speedpay, Inc.*, 161 F. Supp. 3d 1150 (S.D. Fla. 2016) (violations of sections 5.1.0117 and 560.204(1)); *State Farm Mutual Auto. Ins. Co. v. B&A Diagnostics, Inc.*, 104 F. Supp. 3d 1366, 1372 (S.D. Fla. 2015) (violations of the Health Care Clinic Act and the Radiological Personnel Certification Act))

There are many statutes in which the legislature has made the determination to make certain charges noncompensable and unenforceable—including in the insurance context.[26] However, because the statutes in question do not provide for such relief, the Court concludes that the legislature did not intend for it to exist here. *See Buell v. Direct Gen. Ins. Agency, Inc.*, 267 F. App'x 907, 910 (11th Cir. 2008) (declining to find that contract was void for violating a statute which did not so provide where "certain other provisions of the Insurance Code specifically provide that violations render the ensuing contracts or policy terms void"). The fact that the Florida legislature "chose to impose" such a remedy in certain circumstances but not others "indicates a deliberate congressional choice with which the courts should not interfere." *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994).

Because Plaintiff has not alleged a benefit conferred and accepted, which would be unjust for Defendants to retain, Plaintiff fails to state a claim for unjust enrichment. Accordingly, Plaintiff's claim for unjust enrichment (Count IV) is DISMISSED WITHOUT PREJUDICE.

E. Declaratory Relief (Count V)

Plaintiff lodges a claim for declaratory relief pursuant to 28 U.S.C. § 2201 against Calhoun, Omni, Metropolitan, and Coral Gables. Am. Compl. ¶¶ 169–174. Specifically, State Farm seeks a judgment declaring that any "unpaid charges of the Medical Practice and the Surgical Facilities that have been submitted or are submitted during the pendency of this

---

[26] *See, e.g.*, Fla. Stat. Ann. § 627.736(5)(b)(1)(c) ("An insurer or insured is not required to pay a claim or charges . . . To any person who knowingly submits a false or misleading statement relating to the claim or charges;"). In fact, in another subsection of one of the statutes Plaintiff cites (Fla Stat. 817.234) the legislature determined that "[c]harges for any services rendered by any person who violates this subsection in regard to the person for whom such services were rendered are noncompensable and unenforceable as a matter of law." *See* Fla. Stat. Ann. § 817.234(8)(d) (pertaining to soliciting business from a person involved in a motor vehicle accident).

litigation for services rendered pursuant to the Unlawful Referral Agreement, as alleged herein, are not owed because they are the product of an arrangement prohibited by Florida Statutes §§ 395.0185, 456.054, 817.505, 502.201 *et. seq.*, and 817.234." *Id.* ¶ 174.

The Florida Supreme Court held that "an insurer may pursue a declaratory action which requires a determination of the existence or nonexistence of a fact upon which the insurer's obligations under an insurance policy depend." *Higgins v. State Farm Fire & Casualty Co.*, 894 So.2d 5, 12 (Fla. 2004). However, for the reasons discussed in Section III.D., *supra*, Plaintiff has failed to establish that Defendant in fact is owed nothing for its services, even accepting all of the allegations in the Amended Complaint as true. Accordingly, Plaintiff's claim for declaratory relief (Count V) is DISMISSED WITHOUT PREJUDICE.

F. <u>Joinder of Necessary Parties</u>

The Calhoun Defendants argue that the Amended Complaint should be dismissed, pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19, for failure to join indispensable parties—the accident victims with pending claims. First, Calhoun Defendants argue the accident victims are a necessary party because they were "active participants," Calhoun's Motion at 3, 19. Second, Calhoun Defendants contend that the accident victims with pending claims are "parties required to be joined in the action" because "their ability to protect their interests is impeded or impaired if they are not joined in the action. . . ." Calhoun's Motion at 19 (citing Fed. R. Civ. P. 19(a)(1)(B)(i)). Third, Calhoun Defendants appear to argue that the Court cannot "accord complete relief among the existing parties" without joining the accident victims with pending claims. *Id.* (citing Fed. R. Civ. P. 19(a)(1)(A)).

Dismissal under Rule 12(b)(7) is a "two-step inquiry." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011). First, the party moving to dismiss an action

for failure to join an indispensable party must establish the absent party is a "required" party as defined by Federal Rule of Civil Procedure 19(a). *Id.* The moving party "bears the burden of proof in establishing that the non-party is needed for a just adjudication." *Rodriguez v. Niagara Cleaning Servs., Inc.*, No. 09-22645-CIV, 2010 WL 11505477, at *4 (S.D. Fla. Jan. 11, 2010). "Generally, an absent party is not required simply because its joinder would be convenient to the resolution of the dispute." *Clay v. AIG Aerospace Ins. Servs., Inc.*, 61 F. Supp. 3d 1255, 1266 (M.D. Fla. 2014). Instead, an absent party is required where (1) the court cannot accord complete relief among the existing parties; (2) prejudice would result to the absent party's ability to protect itself in the instant action; or (3) the nonparty's absence would create a substantial risk that the existing parties would incur inconsistent or duplicative obligations. *Raimbeault v. Accurate Mach. & Tool, LLC*, 302 F.R.D. 675, 682–83 (S.D. Fla. 2014); *see also City of Marietta v. CSX Transp., Inc.*, 196 F.3d 1300, 1305 (11th Cir. 1999).

Second, if the court determines that the absent party is required, it "must order that party joined if its joinder is feasible." *Raimbeault*, 302 F.R.D. at 682; *see also* Fed. R. Civ. P. 19(a)(2). If for some reason the party cannot be joined, *i.e.*, if joining the party would deprive the court of subject matter jurisdiction, "the court must analyze the factors outlined in Rule 19(b) to determine whether 'in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus regarded as indispensable.'" *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 847 (11th Cir. 1999) (quoting Fed. R. Civ. P. 19(b)). Conversely, if the court determines the absent party is not required under Rule 19(a), the lawsuit continues. *Id.*

### 1) Whether Accident Victims Are "Active Participants"

The Court rejects Calhoun Defendants' argument that the accident victims are a necessary party because they were "active participants," Calhoun's Motion at 19. Calhoun Defendants contend that the accident victims are active participants simply because State Farm's settlements with the accident victims were negotiated "under considerable threats from the patients' personal injury attorneys." *See id.* (quoting Am. Compl. ¶¶ 85–91).

The case Calhoun Defendants cite for this argument—*Laker Airways Inc.*, 182 F.3d at 848—does not support their contention that the accident victims were active participants here. Rather, *Laker Airways* held that an absent party will be considered a necessary party when it is a "joint tortfeasor" and has actively participated in the allegations made in the complaint. *Id.* at 848 (citing *Haas v. Jefferson National Bank*, 442 F.2d 394, 398 (5th Cir. 1971)). For example, in *Laker Airways*, the missing party in that case was alleged to have "conspired" with one of the defendants and to have played an essential role in the conspiracy. *Id.* ("[The absent party] is the only entity that can allocate slots at Gatwick Airport. Without [absent party], [Defendant] would not be able to manipulate . . . the slot allocation process."). There are no allegations that the accident victims participated in any alleged tortious acts here. In fact, the Amended Complaint expressly alleges that Plaintiff is "unaware of any patient ever being informed of" the scheme. *See* Am. Compl. ¶¶ 102, 105.

Accordingly, the Court does not find that the accident victims are necessary parties under the "active participant" rule articulated in *Laker Airways*.

### 2) Whether Accident Victims' Ability to Protect Their Interests Is Impeded If They Are Not Joined

The Court also rejects Calhoun Defendants' argument that the accident victims with pending claims are "required to be joined in the action" because "their ability to protect their

interests is impeded or impaired if they are not joined" in the action. Calhoun's Motion at 19 (citing Fed. R. Civ. P. 19(a)(1)(B)(i)).

Joinder pursuant to Rule 19 section (a)(1)(B)(i) is "contingent [ ] upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action." *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983), *cert. denied*, 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983); *see also United States v. Janke*, No. 09-14044-CIV, 2009 WL 2525073, at *2 n.1 (S.D. Fla. Aug. 17, 2009) (same).

Here, the accident victims have not claimed a legally protected interest relating to the subject matter of this action. "Quite simply, where the individual insureds do not claim an interest . . . [Calhoun Defendants] cannot claim one for them." *W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC.*, No. 08-80897-CIV, 2009 WL 10668605, at *2 (S.D. Fla. Nov. 9, 2009), *report and recommendation adopted sub nom. W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC*, No. 08-80897, 2010 WL 11504833 (S.D. Fla. Jan. 7, 2010).

Accordingly, Calhoun Defendants cannot invoke the necessary party rule set forth in Rule 19(a)(1)(B). *See, e.g.*, *ConnTech Dev. Co. v. Univ. of Connecticut Educ. Properties, Inc.*, 102 F.3d 677, 683 (2d Cir. 1996) (rejecting Defendant's "self-serving attempts to assert interests on behalf of" absent party).

3)  Whether the Court Can Accord Complete Relief Among the Existing Parties Without Joining the Accident Victims with Pending Claims

Finally, the Court rejects Calhoun Defendants' argument that the accident victims are necessary parties under Rule 19(a)(1)(A) because the Court "cannot accord complete relief among existing parties." Calhoun's Motion at 19 (citing Fed. R. Civ. P. 19(a)(1)(A)).

Calhoun Defendants have the burden of demonstrating that the accident victims qualify as "necessary" under 19(a)(1). *Liberty Mut. Fire Ins. Co. v. Int'l Video Distributors, L.L.C.*, No.

14-60955-CIV, 2014 WL 11776959, at *3 (S.D. Fla. July 2, 2014). However, in support of their argument, Calhoun Defendants conclusorily cite Rule 19(a)(1)(A) without addressing whether the Court can accord complete relief among existing parties in the absence of the accident victims. Calhoun Defendants, therefore, have not met their burden under this prong of Rule 19. *See Combe v. Flocar Inv. Group Corp.*, 977 F. Supp. 2d 1301, 1305 (S.D. Fla. 2013) (finding that the defendants did not meet their burden because they failed to explain why the court could not accord complete relief among the parties).

Moreover, Plaintiff seeks only monetary relief in the remaining claims in this action— Fraud (Count III) and FDUTPA (Counts I and II).[27] The Calhoun Defendants do not contend that the Defendants already in this action would be unable to pay the amount sought were they found liable. *See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1039 (11th Cir. 2014) ("The district court could award all of the requested relief without haling the [absent party] into court because [defendant] was fully able to pay damages and comply with injunctions."); *Molinos Valle del Cibao*, 633 F.3d at 1345 ("[M]oney is fungible; the recipient cares not from whence it came."). Accordingly, the Court rejects Calhoun Defendants' arguments for dismissal predicated on Plaintiff's failure to join the accident victims as defendants in this action.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that

 (1) Defendant Metropolitan's Motion to Dismiss (ECF No. 60) is GRANTED IN PART AND DENIED IN PART;

---

[27] Plaintiff's claims for unjust enrichment (Count IV) and Declaratory Relief (Count V) have been dismissed. *See* Sections III.D. and III.E., *supra*, respectively.

(2) Calhoun Defendants' Motion to Dismiss (ECF No. 61) is GRANTED IN PART AND DENIED IN PART;

(3) All Counts are DISMISSED WITHOUT PREJUDICE as to Defendants Merovah, Cerceda, and Triana;

(4) Counts IV and V of the Amended Complaint are DISMISSED WITHOUT PREJUDICE.

(6) Plaintiff has 30 days from the date of this order to file an amended complaint curing the deficiencies described above.

DONE AND ORDERED in Chambers at Miami, Florida, this  25th  day of September, 2017.

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

cc: All counsel of record